## Case No. 4,259.

EASTON et al. v. NEW YORK & L. B. R. CO.

[30 Leg. Int. 124;[1] 9 Phila. 475.]

Circuit Court, D. New Jersey. April 1, 1873.

M. W. Acheson, Mr. Beebe, and John F. Stockton, for complainants.

Geo. Shiras, Jr., Benj. Williamson, and Cortlandt Parker, for respondents.

McKENNAN, Circuit Judge. This motion was heard by me at Pittsburgh, upon the bill and affidavits exhibited by the complainants. Assuming the truth of the facts therein presented, the complainants' case is one of conspicuous merit, loudly calling for relief, by some appropriate and constitutional method of interposition. A bridge is in process of erection by the defendants over the Raritan river, at its mouth, only ten feet in height above the water, which will completely intercept the navigation of the river, except as it may be accommodated by two draws, each one hundred feet in width. This river is the outlet to the seaboard of the Delaware and Raritan Canal, and is the highway for an immense commerce, exceeding in its tonnage that of the whole foreign trade of New York by Sandy Hook. It is shown that the erection of the bridge will duplicate the expense of conducting this commerce, besides subjecting it to great perils, which might be avoided by elevating the bridge sufficiently to allow most of the vessels engaged in the navigation of the river to pass under it. Important as are both of the great interests involved in controversies like this one—the commerce conducted upon and across navigable

[1] [Reprinted by permission.]

streams—either may lawfully be subjected to such reasonable restrictions as may be essential to the maintenance and development of the other. But when restrictions assume the proportions of a destructive or onerous burden, no just principle of public policy will justify their imposition or sanction their continuance. In this latter category the bridge complained of seems to be placed by the evidence before me. Considering the case, therefore, with this impression of it, it is to be regretted that the relief invoked by the complainants must be denied to them.

The Raritan river is wholly within the territory of the state of New Jersey, and, in the erection of the proposed bridge the defendants are acting under the authority of a law of that state. It is not alleged in the bill that the plan of the bridge is not in conformity to the law, but its erection is opposed solely upon the ground that it will seriously obstruct the navigation of the river. It was, however, very earnestly urged by the learned counsel for the complainants, that, assuming the bridge to be such an obstruction, it must necessarily be an unlawful structure, because the state law cannot be construed to authorize the erection of a nuisance. But this conclusion by no means follows. The erection of the bridge is clearly authorised. No condition is imposed as to its height, or as to the length of its spans, but the construction of two draws, each of the width of one hundred feet, is required. In the absence of any express restriction, therefore, the elevation of the bridge, and the distance between the piers, must be taken as intended to be left to the discretion of the defendants, and the implication is clear, that a provision for two draws of prescribed width was deemed by the state the only requisition necessary to accommodate the interests of navigation. The only question then is, is the law itself valid; because, if it is, the defendants cannot be restrained from doing what it clearly authorises them to do.

"The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." In neither of these modes is what is called the police power of the states, taken away from them. By virtue of it the states respectively may pass laws respecting the health of their inhabitants, their internal commerce, the establishment of ferries, the opening of roads, and the erection of bridges. Thus, in the great case of Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1, the court says: "Inspection laws form a portion of that immense mass of legislation which embraces everything within the territory of a state, not surrendered to the general government; all which can be most advantageously exercised by the states themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a state, and those which respect turnpike

roads, ferries, &c., are component parts of this mass." And in the Case of the Passaic Bridges, 3 Wall. [70 U. S.] 782, Mr. Justice Grier says: "The police power to make bridges over its public rivers is as absolutely and exclusively vested in a state as the commercial power is in congress." And again: "That the police power of a state includes the regulation of highways and bridges within its boundaries, has never been questioned." It must, therefore, be regarded as unquestionable, that the law in controversy is within the range of the legislative power of the state. But it is equally clear that the power to regulate commerce is vested in the general government, and that it is paramount to the authority of the state. The bridge in question obstructs the navigation of a highway of commerce, materially affects its interests, and is, therefore, practically and necessarily a regulation of it. How then can the maintenance of the bridge be reconciled with the paramount control of the general government over the subject?

The police power to erect bridges embraces within its scope the right to prescribe their location, the height of their piers, the width of their spans, the dimensions of their draws, and the manner in which they shall be erected, managed and used. All the consequences which result from such regulations are within the protection of the legitimate exercise of the power to make them. More or less obstructing navigation, and abridging its freedom, they operate as regulations of commerce. But these effects are incidental only, and do not necessarily imply the assertion or exercise of a power directly to regulate the subject upon which they operate. So long as they do not interfere with the exercise of a power which is superior, they can not be challenged as encroachments upon it. Actual collision must occur, before an occasion can arise for demanding that the subordinate shall yield to the paramount authority. While, therefore, the commercial power of the general government is dormant, it is beyond the province of the courts to enforce an abridgement of the police power of the states. It is with a law of congress that the legislation of a state must come in conflict before the latter can be adjudged invalid. This is the principle established by a series of decisions of the supreme court, and, as I understand its definition in Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713, it is applicable alike to navigable streams, which flow through or between several states, and to those which are entirely within one state, but are accessible from abroad through the waters into which they empty.

It was declared by Ch. J. Marshall, in Wilson v. Blackbird Creek Marsh Co., 2 Pet. [27 U. S.] 250, where a dam was erected across a navigable inlet from the Delaware river, by authority of a law of the state of Delaware, and it was said: "But the measure authorized by this act, stops a navigable creek, and must be supposed to abridge the rights of those who have been accustomed to use it; but this abridgement, unless it comes in conflict with the constitution or a law of the United States, is an affair between the government of Delaware and its citizens, of which this court can take no cognizance. The counsel for the plaintiffs in error insist that it comes in conflict with the power of the United States, to regulate commerce," &c. * * * "But congress has passed no such act. The repugnancy of the law of Delaware to the constitution, is placed entirely on its repugnancy to the power to regulate commerce with foreign nations, and among the several states; a power which has not been so exercised as to affect the question. We do not think that the act empowering Blackbird Creek Marsh Company to place a dam across the creek, can under all the circumstances of the case, be considered as repugnant to the power to regulate commerce in its dormant state, or as being in conflict with any law passed on the subject." It was reiterated in the Wheeling Bridge Case, 18 How. [59 U. S.] 430, where the structure condemned was a bridge over the Ohio river, which obstructed the passage of steamboats during periods of high water, and then only those which carried very high chimneys. In Gilman v. Philadelphia, 3 Wall. [70 U. S.] 272, the court says: that, in the bridge case, the court placed its judgment on the ground, "that congress had acted upon the subject, and had regulated the Ohio river," and that the law of Virginia authorizing the erection of the bridge, "was in conflict with the acts of congress, which were the paramount law."

It must be considered as sanctioned, at least in the Case of the Passaic Bridges, in which Mr. Justice Grier, in his opinion in the circuit court, dismissing the bill, said: "The police power to make bridges over its public rivers, is as absolutely and exclusively vested in a state, as the commercial power is in congress; and no question can arise as to which is bound to give way, when exercised over the same subject matter, till a case of actual collision occurs;" and his decree was affirmed, although by a divided court. And so again in Silliman v. Hudson River Bridge Co. [Case No. 12,852], 1 Black [66 U. S.] 582, and 2 Wall. [69 U. S.] 403, where the question was presented, whether the court had power to enjoin the erection of a bridge over the Hudson, at Albany, proposed to be constructed under a law of the state of New York, "in case the plaintiff being the owner of vessels holding coasting licenses, shows, to the satisfaction of the court, that such bridge, if erected, will materially obstruct, delay or hinder such vessels in the navigation of said river, while engaged in commerce between said state of New York, and other states," and upon a dismissal of the bill by the circuit court,

its decree was affirmed by division of the supreme court.

Although the two last cases were decided by an equal division of the judges, and according to the usage in such cases, no opinions were delivered, yet the question stated, as primary and jurisdictional, necessarily engaged the consideration of the court. The judgments pronounced, must, therefore, be regarded as authorities binding upon subordinate courts, in cases involving the same question. But in Gilman v. Philadelphia, supra, the subject is fully examined, the true import of the judgments in Wilson v. Blackbird Creek Marsh Co. [supra] and the Wheeling Bridge Case [supra] defined, and the conclusion announced that, in the absence of congressional legislation, the exercise of the power of a state to erect bridges over navigable streams within its limits, is unquestionable in the federal courts. The controversy related to the Chestnut street bridge over the Schuylkill river, at Philadelphia, the erection of which was authorized by a law of Pennsylvania, and which entirely cut off all navigation above it by vessels with masts. The circuit court dismissed the bill of a riparian owner, whose property above the bridge was greatly reduced in value; and the supreme court affirmed the decree, saying: "Until the dormant power of the constitution is awakened and made effective, by appropriate legislation, the reserved power of the states is plenary, and its exercise in good faith, cannot be made the subject of review by this court." As long as these decisions stand, the law must be considered as settled, that a federal court cannot be called upon to prevent a wrong resulting from the exercise of the power of a state to erect bridges over its own navigable streams, until congress has taken the initiative by enacting a commercial regulation, with which the exercise of such power is inconsistent. No such regulation is shown to exist in reference to the stream over which the bridge complained of is about to be erected, and so the law of the state of New Jersey is a complete justification of the defendants. The motion for a preliminary injunction is, therefore, denied.